**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **GLOBALAW LIMITED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 03-950 (CKK)(AK)** |
| | ) | |
| **CARMON & CARMON LAW OFFICE, and** | ) | |
| **GLOBALAW, INC.,** | ) | |
| | ) | |
| **Defendants and Counterclaim Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GLOBALAW LIMITED, et al.,** | ) | |
| | ) | |
| **Counterclaim Defendants.** | ) | |

**COUNTERCLAIM PLAINTIFFS' MOTION PURSUANT TO RULE 56(f)
AND  MEMORANDUM OF POINTS AND AUTHORITIES
FOR THEIR RULE 56(f) MOTION AND IN OPPOSITION TO
<u>COUNTERCLAIM DEFENDANTS' SUMMARY JUDGMENT MOTION</u>**

Counterclaim plaintiffs ("Carmon") request the Court to order Counterclaim Defendants to respond to outstanding discovery requests pursuant to Fed. R. Civ. P. 56(f). [1]  Carmon opposes the Motion for Summary Judgment filed by counterclaim defendants (except as to Count 1, which Counterclaim Plaintiffs concede should be dismissed) on several grounds:

1.      Under Fed. R. Civ. P. 56, the motion is premature, as discovery is far from complete.  Discovery is needed by Carmon in order to respond fully to the motion.  Counterclaim Defendants have refused to respond to discovery requests by Carmon which are

---

[1]      Carmon received today, November 28, 2005, the day this brief is due, the November 14, 2005, order and opinion of Magistrate Judge Kay in this case regarding discovery.  The order and opinion implicate much of what is presented here, and Carmon submits this memorandum as planned before receipt of that opinion and order because (1) they were received too late to revise the brief, and (2) because Carmon will forthwith appeal the order to Judge Kotelly.  Upon checking with chambers, counsel for Carmon was advised that the opinion and order were entered November 14, though the envelope in which the sealed opinion and order were delivered was postmarked November 25 and was delivered in the afternoon of November 28.

needed by Carmon, inter alia, in support of Carmon's proof of infringement and entitlement to monetary award.   Carmon has motions to compel pending against counterclaim defendants. (See docket numbers 90 and 110).

2.      Counterclaim defendants have repeatedly incorrectly stated the legal standard for proof necessary for Carmon to be entitled to a monetary award.

3.      There are material facts in dispute and facts conceded by at least some of the counterclaim defendants that defeat the motion.

For reasons discussed below, Carmon requests that the Court either deny the motion for summary judgment based on the content of this interim response, or compel counterclaim defendants to respond to outstanding discovery requests and permit Carmon time to obtain discovery before being required to make a full and final response to the motion.

### Request for Denial of the Motion Pursuant to Rule 56(f)

From the outset of this case, Counterclaim Defendants have wanted to "have it both ways" in defending the counts in the counterclaim.  On the one hand, they successfully opposed Carmon's efforts to have the case bifurcated into discovery and trial on liability first and only then, if Carmon prevailed on liability, have discovery and trial on a monetary award or other remedies.  Carmon, in support of its bifurcation motion, argued that enormous and contentious discovery would predictably be involved on the issue of monetary award for the infringement, as disclosure of clients of the counterclaim defendants since they started infringing Carmon's mark GLOBALAW and the income the firms received from those clients would require voluminous and sensitive information, which the counterclaim defendants were sure to fight at every step of the way.  By having liability decided first, Carmon argued, if Carmon lost on liability the case

would be over at the trial level.  On the other hand, if Carmon prevailed on the issue of liability,

the result might well be a settlement of the case.  But at least in that latter case the very

contentious discovery on monetary award issues <u>might</u> be avoided or reduced.

The Court ruled with the counterclaim defendants and declined to bifurcate.  As Carmon

predicted, the monetary award discovery issue has been contentious and has resulted in a

plethora of necessary and now-pending motions to compel, and related motions.

Now Counterclaim Defendants have taken the position that Carmon may not have

discovery on liability and/or monetary award issues from their clients acquired while they were

using the mark GLOBALAW.  The discovery refusal issue has been briefed extensively, both in

motions to compel discovery and in Carmon's Opposition to the Partial Summary Judgment

Motion filed by Counterclaim Defendant Garvey Schubert Barer (GSB) earlier.  But that same

refusal of discovery denies Carmon vital evidence relating to liability, as it prevents discovery of

the improper use of the mark and infringement of Carmon's rights by counterclaim defendants to

obtain clients.  Carmon would obtain that evidence from the clients themselves testifying as to

what use was made of the mark by the counterclaim defendant law firms and what impact the use

of the mark had upon the clients' decisions to retain those law firms. This denial of discovery of

such vital information is not a legitimate trial strategy.

At every discussion with lawyers for counterclaim defendants where counsel for Carmon

has set forth its need for discovery in order to provide evidence of willfulness, bad faith, income,

and infringement, the counterclaim defendants' assertion has been that Carmon is merely

engaging in a fishing expedition.   Legitimate discovery -- searching for evidence using the

means provided in the Federal Rules of Civil Procedure -- is frequently characterized as a fishing

expedition by parties trying to avoid losing their case because of what will be found during legitimate discovery.

Federal Rule 56(c) of Civil Procedure provides that a summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  However, it is well established that summary judgment is only proper after the plaintiff has been given "adequate" time for discovery.  *Celotex Corporation v. Catrett,*  477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (the Supreme Court advises that the "plain language' of Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery"); *First Chicago International v. United Exchange Co., Ltd*  836 F.2d 1375, 1380 (D.C. Cir. 1988); *Americable International, Inc. v. Department of Navy,*  129 F.3d 1271, 1274  (D.C. Cir. 1998); *Anderson v. Liberty Lobby,*  477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (plaintiff would need a "full opportunity to conduct discovery.").

The Second Circuit went further and offered that "only in the rarest of cases" would summary judgment be granted where the plaintiff had not been give the opportunity to conduct discovery.  *Hellstrom v. U.S. Dept of Veterans Affairs,*  201 F.3d 94, 97 (2nd Cir. 2000).

The District of Columbia Circuit has frowned on cutting discovery short where it was clear that it had been ongoing and relevant to addressing a material issue.  The district court had been found to have abused its discretion under Federal Rule of Civil Procedure 56(f) by granting summary judgment where further discovery would have assisted the court in determining which disputed issues of facts were genuine. [2]  *Information Handling Services, Inc. v. Defense*

---

[2]        Rule 56(f) provides "Should it appear from the affidavits of a party opposing the motion that the party

*Automated Printing Services*,  338 F.3d 1024 (D.C. Cir. 2003) ("And to the extent there is any doubt about the genuineness of those disputes, it cannot be resolved until IHS is 'given adequate time for discovery.'" citing *Americable*, 129 F.3d at 1274).

The ongoing nature of the discovery is another factor that the courts have considered in deciding whether a motion for summary judgment had been premature and whether adequate time has elapsed.  The District of Columbia Circuit has held that "the outstanding interrogatories, document requests and deposition subpoena were sufficient to inform the district court that further discovery was needed" and additionally could partially fulfill the affidavit required under Rule 56(f) in order to oppose a summary judgment motion.  *First Chicago International*, 836 F.2d at 1380.

The discovery Carmon is seeking by its several motions to compel discovery that are presently pending in this Court addresses the material issues of infringement and recovery, including the fact issues of bad faith and willfulness, similarity of areas of law practice, meaning of the mark GLOBALAW to clients, and other factors relating to confusion.  (Exh. 15, Declaration of John Lowe).   That Counterclaim Defendants' Motion for Summary Judgment is premature is further bolstered by the fact that the information Carmon needs is in the possession of the counterclaim defendants and their clients, as well as by the fact that Carmon's requests to obtain discovery have been met with absolute resistance and refusal.  The court noted in *First Chicago International*, 836 F.2d 1831, that the information sought by the plaintiff "remained in the defendants' hands" in the determination that summary judgment had been inappropriate.  *Id.* at 1381.  The Third Circuit held that "when pertinent discovery requests remain unanswered by

---

cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

the moving party" and "where the facts are in possession of the moving party[,] a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." *Sames*, 732 F.2d at 51 (citing *Ward v. United States*, 471 F.2d 667, 670-71 (3d Cir.1973)).

Pursuant to Fed. R. Civ. P. 56(f), the Court should either (1) deny the motion for summary judgment without prejudice to the counterclaim defendants filing it again at the end of discovery, or (2) continue the time for Carmon to make a full response in opposition to the motion following discovery.  While Carmon has done the best it can at this point to oppose the motion, given the limited discovery it has had, a full and effective response requires Carmon to have the discovery to which it is entitled, to which it has served the appropriate discovery requests on Counterclaim Defendants and to which it has filed motions to compel with this Court.

## Argument (and Genuine Issues of Material Facts in Dispute)

### Discovery Is Essential and Has Been Denied.

There are two threshold issues that Carmon urges are the reason, at least, for denying Counterclaim Defendants' Motion for Summary Judgment, namely, (1) Carmon has not had the opportunity to conduct relevant and important discovery of the law firm defendants in certain key issues and (2) there are material fact issues in dispute.  Fed. R. Civ. P. 56(f) provides for the Court to allow time for discovery by a continuance or other appropriate action.  The law of the D.C. Circuit is clear that motions for summary judgment are premature under Rule 56(f) until adequate discovery has been afforded to the responding party.  *Information Handling Services, Inc. v. Defense Automatic Printing Services*, 338 F.3d 1024 (D.C. Cir. 2003); *First Chicago*

*International v. United Exchange Co., Ltd.*, 836 F.2d 1375 (D.C. Cir. 1988); *American International, Inc. v. Department of Navy, et al.*, 1298 F.3d 1271 (D.C. Cir. 1998).  Here, there are two pending motions in this Court to compel Counterclaim Defendants Ballard, Spahr, Andrews & Ingersoll, L.L.P. (BSAI)(docket number 90) and Jackson Walker. L.L.P. (JW)(docket number 110) to provide discovery, showing that discovery has been thwarted by an arrogant refusal to give any discovery on infringement and monetary award issues.  The depositions of BSAI, Globalaw Limited (GL), and C. Baird Brown were begun months ago, but had to be suspended due to the witnesses refusal, upon instruction of counsel, to answer relevant and important questions.  Further action on those depositions await the rulings of this Court on the pending motions to compel discovery from BSAI.  Similarly, completion of depositions of JW and Bryan Birkeland, partner of JW and former president of Globalaw Limited, have been deferred until the Court rules on the pending motion to compel discovery from JW.  At a minimum, the Court should deny the Motion for Summary Judgment until Carmon obtains the discovery to which it is entitled.  That one matter should be enough to defeat the motion at this time.

But additional, persuasive arguments are presented as well, to enable the Court to "see the whole field," and understand the status of matters, as almost everything is now stalled because of the discovery dispute and Carmon's inability to finish discovery on infringement and monetary award issues.  It is obvious but bears additional emphasis:  Carmon has no way of establishing and proving factual issues such as actual confusion, likelihood of confusion, secondary meaning (if it becomes necessary to prove it), monetary award issues, and other fact issues relating to the clients of the counterclaim defendant law firms without the requested discovery. There is no opportunity for meaningful self-help discovery and investigation by

Carmon -- by subpoenaes, depositions, or other discovery tools  -- since Carmon doesn't know who Counterclaim Defendants' clients are.  (Exh. 15.) [3]

This problem for Carmon is brought into sharp focus by Counterclaim Defendants' Statement of Undisputed Facts (cited as SUF) and Memorandum of Points and Authorities (cited as MPA).  Repeatedly, the SUF and MPA assert that there is no evidence that any of their clients were confused.  "Nor is there any evidence that any client or potential client of any of the Counterclaim Defendants have mentioned C&C or being confused . . . "  SUF, page 13.  "Indeed, and more generally, C&C cannot provide any specific instance in which anyone has confused Globalaw Limited and Globalaw, Inc. by the former use of the term "GLOBALAW."  SUF, page 14.  ". . . there is an utter lack of any proof that Counterclaim Defendants' revenues have been attributable to their use of the term "GLOBALAW."  MPA, page 2.  "First, a plaintiff may establish secondary meaning through the use of direct evidence, such as ". . . testimony from consumers."  MPA, page 23.  All of these issues are potentially susceptible of proof obtained from clients of Counterclaim Defendants.  But because Carmon has been denied any discovery of those clients, Carmon has no way of obtaining such evidence from Counterclaim Defendants' clients.  (Exh. 15).  Similarly, Counterclaim Defendants allege in their MPA that there is no evidence of their infringement being willful or in bad faith.  MPA, at 39-40.  Carmon believes that also can be proved by evidence from their clients, in addition to the evidence already obtained by deposition of C. Baird Brown, partner of Ballard, Spahr, Andrews & Ingersoll, L.L.P. and former president of Globalaw Limited.   But the denial of discovery prevents Carmon from obtaining that additional evidence from clients of Counterclaim Defendants.

---

[3]        All exhibit numbers refer to the exhibits to the Statement of Material Facts in Dispute.

It is all well and good for Counterclaim Defendants to say that there is no survey evidence offered by Carmon.  But there is no legal requirement for Carmon to submit survey evidence.  Additionally, the survey produced by Counterclaim Defendants is irrelevant and fatally defective, and therefore unusable, as discussed below.  Lastly, surveys are very expensive, as are the experts necessary to use survey evidence successfully, and Carmon does not have the financial resources that the four Counterclaim Defendants have.  (Exh. 11)  Much of the evidence which a proper survey could address, namely, whether the mark GLOBALAW as used by Carmon and Counterclaim Defendants serves as identifying the source of legal services, can likely be received from Counterclaim Defendants' clients, and thus Carmon chooses to use consumer testimony; namely, testimony obtained from clients of the Counterclaim Defendants, as well as the declarations of Carmon & Carmon clients in Exh. 13.  The three clients of Carmon & Carmon state that they know the mark GLOBALAW identifies legal services provided by Carmon & Carmon.  There three declarations, by themselves, provide a material issue of fact in dispute that requires denial of the motion for summary judgment.  Thus, it is important for the Court to either dismiss the Motion for Summary Judgment without prejudice or stay it while granting Carmon's motions to compel discovery (see docket numbers 90 (BSAI and 110 (JW)).

Several comments will help avoid the reader mistaking the arguments made here.  First, contrary to the impression the SUF and MPA seek to create, both Haggai and Rakeffet Carmon are United States citizens and have been so since 1995.   (Exh.11, Affidavit of Haggai Carmon).

Second, Carmon is not here claiming a network of lawyers.  It is asserting that the GLOBALAW service mark identifies the source of the  firm's legal services.  Haggai Carmon repeatedly affirmed and reaffirmed in his depositions that GLOBALAW is the same as Carmon & Carmon -- it is the name the firm uses to identify itself in the practice of law and its services.

(Exh. 11).   Counterclaim Defendants attempt to erect a straw horse network issue so they can knock it down in their memorandum.   Carmon does not lay claim to infringement or monetary award relating to a network owned, operated by, or conducted by Carmon & Carmon.   Whether there was or is a group of law firms Carmon has worked with in the past or works with now in the form of a network, is irrelevant to the infringement and monetary award sought in this case.

Third, Rakeffet Carmon's law practice is far broader than merely immigration law and her clientele is broader than merely Israeli nationals.   (Exh. 14).   It is true that most of her clients' matters are of long duration, with long periods of "hibernation" where nothing is happening pending rulings by tribunals, so that at any point in time she has perhaps several dozen active matters -- meaning matters demanding her attention and work, but her case load overall of active cases continually numbers well over 100.  (Exh. 14).  And that does not mean that the Carmon firm does not and cannot handle additional matters.  That Rakeffet Carmon does little litigation is not relevant.  Her practice of law covers a wide variety of fields.  (Exh. 14). Most of the types of matters she handles, e.g., immigration cases, do not involve depositions, because of the nature of the matters and the proceedings attendant to them.

Fourth, Haggai Carmon's United States practice is extensive and varied.  It is true that he could not recall details during his deposition, but his affidavit sets forth details on his extensive law practice.   (Exh. 11, Affidavit of Haggai Carmon).

So, now Carmon turns to the issues that preclude summary judgment at this time.


Likelihood of Confusion

Carmon's proving likelihood of confusion is made more difficult by the refusal of Counterclaim Defendants to provide the requested discovery of their clients.  There are at least

fact issues involved in proving likelihood of confusion, as acknowledged by Counterclaim

Defendants at MPA, page 28, where they list the eight fact factors to be considered in

determining the issue of confusion.  Counterclaim Defendants complicate the issue further by

incorrectly attributing statements to Mr. Carmon that he never made.  For example, they quote

him at MPA, page 12, as saying that "C&C admits that no client has confused the Globalaw, Inc.

'Network' with Globalaw Limited (HC 248)."  But when that deposition page is read, Mr.

Carmon said nothing of the kind.  He merely said that he was *not aware of* any client in the

United States who has experienced confusion as to affiliation between Carmon and Carmon and

Globalaw Limited.  Big difference, for this brings the Court back to the issue of refused

discovery, as that is one of the important means by which Carmon intends to show actual

confusion and/or likelihood of confusion.

The following factual factors among the eight listed show that there are material facts in

dispute (lettered to correspond to the list on Counterclaim Defendants' MPA, page 28:

"(a) the strength of plaintiff's mark."  Since the same mark is at issue, this is a

factor that contributes to confusion.  (Exh. 15).

"(b) the degree of similarity between the two marks."  This case involves the

identical mark, which contributes to confusion.  (Exh. 15).

"(c) the proximity of the products."  Carmon has substantial overlap in the areas

of law practice of Counterclaim Defendants, thus contributing to confusion.  (Exh. 11).  See page

24, below.

"(e) evidence of actual confusion."  Carmon wants and needs the discovery of

Counterclaim defendants' clients in order to develop evidence on this issue.  (Exh. 15).

"(f) the defendant's purpose or reciprocal of good faith in adopting its own mark." Counterclaim Defendants are guilty of bad faith as shown below at page 17. Counterclaim defendants willfully used Carmon's mark, GLOBALAW, when it knew that Carmon was the senior holder of rights to the mark and knew that the Asset Transfer Agreement with Campbell did not even purport to transfer any rights to the mark in the United States. At a minimum this presents a material issue of fact for a jury.

Furthermore, the issue in this case is not whether there is confusion between the Globalaw, Inc. network and Globalaw Limited or even confusion between Globalaw/Carmon & Carmon and Globalaw Limited; the issue is whether there is a likelihood of confusion caused by the Counterclaim defendants' use of the mark GLOBALAW to promote their legal services and Carmon's use of the identical mark to promote its identical services. [4] In fact, Counterclaim Defendants claim that they do not use the mark to promote their services, whereas Carmon asserts and has offered evidence that they do, by letterheads, web sites, brochures, and other means. That is another disputed material fact for the jury.

Reverse Confusion

Despite emphasizing the size differences between Carmon and themselves, Counterclaim Defendants neglect to address reverse confusion, without which their likelihood of confusion analysis is incomplete. That, by itself, leaves unresolved material fact issues for the jury to resolve and defeats the motion for summary judgment. Critical fact issues here include the date on which Counterclaim defendants allegedly claim first rightful use of the mark GLOBALAW. See below, for a discussion of the facts showing that neither Campbell nor Globalaw nor any of

---

[4]     Globalaw, Inc. was merely a service company and ceased to operate several years ago. It never had a network.

the Counterclaim Defendant law firms ever received any United States rights to the service mark GLOBALAW.

Similar to a typical forward confusion case, reverse confusion seeks to protect consumers from confusion; however, it additionally recognizes the scenario where the use of the mark by a larger junior user is overwhelming the interests of a smaller senior user.  *See Banff, Ltd. v. Federated Dept. Stores, Inc.* 841 F.2d 486, 490 (2d Cir. 1988).

 The facts before us clearly portray such a scenario.  Globalaw Limited, made up of eleven large U.S. firms, including Counterclaim Defendants,  and over 75 firms worldwide, are the junior users using the identical mark as first used by Carmon.  Use by these firms and Globalaw Limited has injured and continues to injure Carmon, the senior user, destroying the good will associated with Carmon's mark.  Potential clients who have seen the GLOBALAW mark may believe that the larger Counterclaim Defendants are the source of Carmon's legal services and wrongly assume that Carmon is the infringing party.  *Banff, Ltd.*, 841 F.2d at 490-91 (ultimately "reverse confusion also inhibits fair competition and deprives [plaintiff] of its reputation and good will."); *Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 957 (2d Cir. 1992) ("The result is that the senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.") (citing *Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960, 964 (6th Cir. 1987)).    Counterclaim Defendants' assessment of the likelihood of confusion does not take into account a reverse confusion case.  In their evaluation of the similarity of marks, they claim that the use of the GLOBALAW mark "in conjunction with prominent use of their firm names—Ballard Spahr Andrews & Ingersoll, Jackson Walker, and Garvey Schubert Barer" is unlikely to cause confusion. (MPA, at 31).  However, in the present

case, where we are dealing with identical marks, it is *this* association of the GLOBALAW mark with the more well-known firms, that will confuse potential clients. *Sands, Taylor & Wood Co.*, 978 F.2d at 960 (stating, where the senior party used the mark in conjunction with their famous isotonic sports drink, "[u]nder the circumstances, the linking of the plaintiffs' mark with the defendant's brand name is an aggravation, not a justification.) (citing *International Kennel Club v. Mighty Star, Inc.*, 846 F.2d 1079, 1088 (7th Cir. 1988)).

Our facts regarding this reverse confusion will also affect the evaluation of the other factors set forth by Counterclaim Defendants. The requirement that the plaintiff demonstrate the defendant's effort to palm off the senior user's reputation becomes irrelevant here where the Counterclaim Defendants are overwhelming Carmon's reputation. *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 31 U.S.P.Q.2d 1592, 1602 (3rd.Cir. 1994).

Furthermore, the strength of the mark, in a reverse confusion case, should be considered in terms of its association with the Counterclaim Defendants' legal services. *Sands, Taylor & Wood Co.*, 978 F.2d at 959-60 (asserting that where the marks and goods are identical, little significance should be placed on the mark's strength or weakness) (citing 1 J. Thomas McCarthy, Trademarks and Unfair Competition § 11:24, at 504-06).

Courts have applied a reverse confusion analysis recognizing that not doing so could readily open the gates for any junior user with the economic means to infringe the marks of an innocent senior user. *Fisons Horticulture*, 31 U.S.P.Q.2d at 1597; *Banff, Ltd.*, 841 F.2d at 491. Failure could deprive Carmon of the ability to fully protect its interests in the GLOBALAW mark.

<u>Counterclaim Defendants Never Acquired Any Rights In Or To The Mark GLOBALAW And Used The Mark In Bad Faith.</u>

Carmon commenced using the mark GLOBALAW in interstate commerce as early as 1987. (Exh. 1, Affidavit of Rakeffet Carmon)  Carmon itself filed for federal registration of the mark on March 28, 1994, but for technical reasons that application was never accepted before the Campbell application was filed.  (Exh. 1)  Dennis Campbell was the lawyer living in Austria who set up the original group of law firms comprising what Campbell called the Globalaw Network beginning in late 1993, well after Carmon first used the same mark.  (Exh. 2, Deposition of Dennis Campbell, at 13, 29).   Campbell filed an application in the United States Patent and Trademark Office (USPTO) requesting United States federal registration of the service mark GLOBALAW in 1994.  (Exh. 2, at 29).  Haggai Carmon, partner in Carmon & Carmon, filed in the Trademark Trial and Appeals Board (TTAB) an opposition to that registration in 1996.  (Exh. 2 at 42)

On February 6, 2002, a corporation called Globalaw Limited, which is the plaintiff and also a counterclaim defendant, was formed in the Jersey Isles offshore of the UK.  (Exh. 3, Ex. 5 at 71-74)   On February 28, 2002, Dennis Campbell transferred to the newly formed corporation Globalaw Limited all rights to the mark GLOBALAW that he claimed to own in certain specified countries, which were listed in the Asset Transfer and Consulting Agreement.  (Exh. 2 at 149 and Exh. 4, Deposition Exhibit 8 from the Campbell deposition)  The United States was <u>not</u> one of the countries listed.  No rights in the United States to the service mark GLOBALAW were transferred to Globalaw Limited or anyone else by Dennis Campbell by the Assets Transfer Agreement or by any other document or act.  (Exh. 2 at 163)   Brown testified for Globalaw Limited, for BSAI, and for himself, individually, that Globalaw Limited did not acquire rights to

the mark in any way other than from and through Campbell. (Exh. 5, C. Baird Brown Deposition, at 49). Therefore, Globalaw Limited has had no rights to the mark GLOBALAW in the United States from the moment of its formation on February 6, 2002, until the present time. Again, Carmon needs to have its discovery before making a full and final response to the pending motion-- though, ironically, what has been set forth above should be enough for the Court to find that there are material facts in dispute and deny the motion outright.

C. Baird Brown also testified that BSAI obtained its rights to use the mark in the United States from Globalaw Limited. (Exh. 5 at 49) But Globalaw Limited never had acquired and did not have any rights to the mark in the United States, as discussed above. That assertion also shows bad faith, as Brown was the first president of Globalaw Limited and was intimately familiar with and presided over the process of obtaining assets from Campbell and knew that the Asset Transfer and Consulting Agreement did not transfer to Globalaw Limited any rights to the mark in the United States. (Exh. 2 at 52 ) Carmon believes that JW and GSB had the same guilty knowledge and, ergo, acted with the same bad faith, but needs full discovery to verify those facts. At the least, there is a factual dispute on the material issue of bad faith.

Counterclaim defendants cite other elements that they contend Carmon needs to be able to prove in addition to use of the mark and income from that use in order to qualify for a monetary award, and therefore urges this Court to require these as elements of proof before allowing discovery on monetary award issues. Analysis of those assertions has been fully presented by Counterclaim Plaintiffs in their Opposition to the GSB Motion for Summary Judgment (docket number 113), and the two motions to compel (docket numbers 90 and 110), already on file with the Court. As stated in that Opposition and those motions to compel, while Carmon disagrees that some of those issues must be shown by Carmon in order to obtain a

monetary award, it is clear that for almost all of them, Carmon needs discovery of the counterclaim defendants in order to find the evidence it needs to defend against the motion. Discovery on those issues has been requested by Carmon but the Counterclaim Defendants have refused to provide the requested discovery.

An interesting assertion is made by Counterclaim Defendants (see Garvey Schubert Barer Memorandum in Support of Motion for Summary Judgment, in the Court file, docket numbers 105 and 106, at page 14: ". . . the record is entirely to the effect that consumers of legal services know exactly who (sic) they are hiring, and that no business diversion has taken place.")  It should come as no surprise that this assertion is not backed by any evidence in the record or otherwise.  In fact, the natural inference is that a client who selects GSB, for example, as a result of a referral from another Globalaw Limited member or visiting the web site of Globalaw Limited, doesn't know anything about GSB initially except that GSB is a member of Globalaw Limited.  True, the client may then investigate further in various resources, but the initial contact likely involves no more than association of GSB with the name Globalaw.  Thus, GSB benefits from the infringing use of the mark, as do all the counterclaim defendants in similar situations. These are factual disputes for the jury.

As a result, none of the Counterclaim Defendants could obtain any rights to the mark in the United States from or through Globalaw Limited.  And Campbell testified that he did not transfer any rights to the mark in the United States to anyone in the Asset Transfer and Consulting Agreement (Exh. 2 at 163).  Prior to the formation of Globalaw Limited in February, 2002, there was a letter of understanding between Campbell and members of his Globalaw Network giving the members only a license to use the mark but retaining ownership in

Campbell. [5]   Thus, the Counterclaim Defendant law firms could not have acquired any rights to the mark before or after the formation of Globalaw Limited.  Moreover, they would have known in February 2002 that they had no rights to use the mark in the United States when they read the Asset Transfer and Consulting Agreement and saw that the United States was not listed.  And, they would have known from the language of the membership agreement in the Campbell Globalaw Network that they obtained no rights to the mark in the United States from Campbell because under the agreement Campbell retained United States rights to the mark and never transferred any rights to them.  Campbell testified that Globalaw Limited did not even ask for the United States rights to the mark.  (Exh. 2 at 57).  In the SUF and MPA, Counterclaim Defendants attempt to overcome this logical and compelling fact -- the agreement specifically and expressly excluded transfer of rights in the United States by listing all countries in which rights were to be transferred and explicitly _not_ listing the United States.

Moreover, Campbell did not own rights to the mark in the United States -- Carmon & Carmon did -- which is the issue still pending in the TTAB.  At a minimum, the ownership of rights to the mark GLOBALAW, as between Dennis Campbell and Carmon & Carmon, is a material disputed fact issue for the jury.

To use the mark, knowing that Carmon claimed it to be its mark and knowing that none of the Counterclaim Defendants nor Globalaw Limited had obtained rights to use the mark in the United States from any source comprises willfulness and bad faith.  It is discovery through full and complete depositions of Counterclaim Defendants and their witnesses that will produce the corroboration of the willfulness and bad faith, that is evident from the documents. [6] Carmon

---

[5]       Appended as Exh. 6 is the membership letter of understanding in the Campbell Globalaw Network that preceded the formation of Globalaw Limited.  (Exh. 6, BSAI Production Document BSAI 2475-77)  This copy was signed by BSAI.

[6]       Due to Counterclaim Defendants' refusal to permit witnesses to answer questions regarding identification

should be entitled to obtain the discovery on those facts before having to fully and finally respond to the motion.

The Mark GLOBALAW Is Not Generic or Descriptive

One of the major factual issues in dispute is Counterclaim Defendants' contentions that GLOBALAW, as used by Carmon, is generic or descriptive.  MPA, pages 14-19.  Carmon contends the mark is merely suggestive.  (Exh. 11)   Perhaps there can be little better proof of how much of a factual dispute exists on the issue that the mark GLOBALAW is not generic, descriptive, or unprotectable than by comparing the opinion of Counterclaim Defendants' experts opinion relied upon by Counterclaim Defendants with a few of the marks approved by the United States Patent and Trademark Office (USPTO) as trademarks or service marks.  This list represents findings by the experts at the USPTO that these marks, all of which commence with the word "global" followed by a descriptive word, were not generic or descriptive marks -- otherwise the applications for registration would not have been approved.  The following list is a sample accumulated from a portion of the database of marks at the USPTO.  Copies of the web pages from the USPTO's web site are appended as Exh. 12, and show that the following trademarks were accepted by the expert examiners at the USPTO as registerable and not descriptive or generic (i.e., protectable).

| Mark | Registration or Serial Number | Goods or Services |
|------|-------------------------------|-------------------|
| GLOBALGRIP, Registration number 2988204, Holder for a personal electronic device |

---

of clients, identification of potential clients to which they sent promotional materials, income received, and other related matters, Carmon suspended the depositions pending rulings on its motions to compel.  Exh. 15.

GLOBALMILES, Registration number 2973539, Airline reward miles

GLOBALSCAN, Registration number 2846775, fraud detection services (credit card electronic screening)

GLOBALSCAN, Registration number 2836950, computer software scanner

GLOBALCOACH, Registration number 2612873, Chauffer driven ground transportation

GLOBALIFELINE  (See omitted second "L"), Reg. number 2955277, Health information and advice

GLOBALGEAR, Registration number 2485331, positive displacement pumps

GLOBALMOGUL, Registration number 2715147, business management services

GLOBALGIFTS,  Registration number 2335307, manicure sets

GLOBALGIVING, Serial number 76501218, Charitable fund raising

GLOBALABILITY, Serial number 7642453, educational services

GLOBALWIRE, Registration number 2865380, Banking and financial services

GLOBALENGLISH, Registration number 2605539, computer programs for teaching language

GLOBALCLICKS, Registration number 2575240, telecommunications gateway services

GLOBALCOLLECT, Serial number 75396606, computer software for financial management

GLOBALCARE, Registration number 2435061, travel insurance brokerage

GLOBALCITE, Registration number 2878090, legal citation research services

GLOBALVEST, Registration number 2632326, investment advisory services

GLOBALTEACH, Registration number 2447575, recruiting for teaching positions outside U.S.

GLOBALINER  (See omitted second "L"), Registration number 2336266, vehicle cargo barriers

GLOBALCONNECT, Registration number 2474170, health counseling services

GLOBALDATA, Registration number 2468265, distributor of computer software

GLOBALOCK  (See omitted second "L"), Registration serial number

GLOBALMART, Registration number 2590195, electronic locks

With the extensive use of marks using the word "Global," people no longer attribute a generic or descriptive connotation to the mark -- the public recognizes that the term is a trademark (service mark) indicating the source of goods (services).  This has been recognized judicially.  See, e.g., *World Carpets, Inc., v. Dick Littrell's New World Carpets*, 438 F.2d 432 (N.D.Tx. 1971) regarding the trademark World Carpet.

> There are certain words, which while containing the germ of geographic significance, cannot be identified
> with any specific geographic unit or are not used in a descriptive sense and hence do not fall within the

ambit of proscribed trademarks. Indeed, the statutory language declares nonregisterable only those words which are 'primarily geographically descriptive.'

* * *

[3] To this category of registerable words can be added WORLD- a term far too broad to suggest any identifiable unit or place of origin. Nor can it be said that the term is used in a descriptive fashion, for it neither relates to the place of origin of the goods so marked, nor is it descriptive of the bounds within**487** which the trademark owner functions. We are wholly in accord with the following reasoning expounded by the Court of Customs and Patent Appeals in holding GLOBE, a synonym of WORLD not to be a geographic term.

We are of the opinion that the word 'Globe' is not merely a geographical name or term in the sense in which the phrase is used in the statute. A geographical name or term to our minds signifies a nation, state, county, city, municipality, river, lake, or the like. The reasons for denying a trademark monopoly upon such names or terms is obvious, but 'Globe' has no such geographical significance; it identifies no particular geographical location, nor is its proper use as a trade-mark likely to interfere with or embarrass any public or private right.

438 F.2d at 486-87.

 Thus, the trademark is protectable and registerable.

Counterclaim defendants try to blunt this sharp fact by citing to law firms who use the word "global" in a fair use or descriptive manner but not as a service mark.  (See, SUF, page 15, and MPA, page 18).   Their use of the word "Global law firm" is a fair use that does not infringe Carmon's mark, nor does it derogate the strength or the protectability of the mark.  The real question here is how the consuming public, namely clients and prospective clients, perceive this use.  This is a fact question for the jury.

It is interesting that, in an effort to show at least one law firm that uses the actual mark "GLOBALAW," counterclaim defendants asserted that White & Case uses the term "Globalaw Law Firm."  (SUF, page 15, item 4; MPA, page 18, item 4).  But a view of the actual web site shows that not to be true.  That firm only refers to itself only as "a Global Law Firm," as the others do.  White and Case never refers to itself as Globalaw nor uses that term on its web site anywhere.  See www.whitecase.com.   None of the law firms and law schools cited by Counterclaim Defendants use the combined term "globalaw" or the individual words "global" and "law" as a service mark to indicate the source of their services. Furthermore, there is no

evidence as to how long or how extensive any of those third parties have used the words "Global Law." That will be another fact for the jury to decide.

Contrary to David Kera, Counterclaim Defendants' expert who rendered his opinion that the mark is generic or descriptive, GLOBALAW is merely suggestive of Carmon's legal services. It suggests many things, such as that Carmon's legal services cover many legal areas, that its services are rendered throughout the world, and that its client base is wide spread. How the consuming public reacts to Carmon's mark is a fact issue. Evidence of this -- at least showing a factual dispute for a jury -- are the declarations attached as Exh. 13 from Carmon & Carmon clients attesting to the suggestive nature of the mark GLOBALAW -- indicating to those clients the source of legal services being Carmon & Carmon and bringing that law firm to mind when they hear or see the word Globalaw.

Combining with Campbell to support the registration is also an admission by the firms.

It is noteworthy that Globalaw Limited, the purported owner of the mark according to Counterclaim Defendants, originally sued Carmon for a declaratory judgment in which Globalaw Limited clearly asserted that it owned rights in and to the mark GLOBALAW. Revealingly, Counterclaim Defendants do not acknowledge that Globalaw Limited originated this litigation anywhere in their SUF or MPA, probably for two reasons. First, Globalaw Limited admits in the pleading -- a judicial admission -- that the mark GLOBALAW is protectable when it asserts that Globalaw Limited is the owner of the mark ("GL seeks a declaration that GL *is the owner of United States trademark rights in the GLOBALAW service mark* in connection with association services, namely promoting the interests of a group of law firms providing legal services on an international basis." Globalaw Limited Complaint, ¶ 19 (emphasis supplied)). If the mark were not protectable, Globalaw Limited could not own it. Thus, that is a judicial admission that the

mark is protectable.  Second, the SUF and MPA attempt to leave the reader with the impression that this whole litigation was initiated by Carmon.  But Carmon was only defending itself from the Globalaw Limited Complaint and counterclaiming against the Counterclaim Defendants.  It did not initiate litigation because the issue of ownership of the mark was being contested at the TTAB.

Additionally, C. Baird Brown, testifying as corporate designee on the Rule 30(b)(6) deposition of Globalaw Limited, again admitted that the mark was protectable numerous times by asserting that Globalaw Limited owned all rights to the mark.  (See, e.g., Brown dep., page 48-49, Exh. 5).  None of that could not be true if the mark was generic or descriptive, and unprotectable.  That is a judicial admission by Globalaw Limited.

And Campbell, from whom Counterclaim defendants contend Globalaw Limited received rights in the mark in the United States filed an application to register GLOBALAW, asserting that the mark was registerable, and continuing to this day to pursue registration at the USPTO.  (Exh. 15).  Interestingly, Campbell is represented at the TTAB by JW, who, presumably is asserting that the mark is registerable (i.e., protectable) in good faith.

<u>Similarity of Services Provided By the Parties.</u>

With regard to the areas of law practice in which JW, BSAI, GSB and Carmon have been or are engaged, counterclaim defendants would have the Court believe that there is no correlation that supports Carmon's claims of infringement.  The following chart has been prepared from examining the JW, BSAI and GSB websites  and from the Affidavit of Haggai Carmon (Exh. 11).  It shows graphically that there are legally significant overlaps of services provided by counterclaim defendants on the one hand, and Carmon, on the other hand.

## PRACTICE AREA -  COMPARATIVE TABLE

| | BSAI | JW | GSB | C&C/GLOBALAW |
|---|---|---|---|---|
| Affordable Housing and Community Development | * | | * | |
| Antitrust | | * | * | |
| Appellate | | * | | *Administrative Appeals |
| Bankruptcy & Creditors' Rights | * | * | * | |
| Biotechnology/Life Sciences | * | * | | *Represent biotech companies in commercial matters |
| Business | * | * | * | * |
| Class Action Litigation | * | | * | |
| Commercial & Secured Transactions | * | * | * | *Commercial contract matters |
| Communications & Media Law | | | * | |
| Construction | * | | | |
| Consumer Financial Services | * | | | |
| Corporate Finance & Securities | * | * | * | |
| Eminent Domain | * | * | | |
| Employee Benefits | * | * | * | |
| Energy and Project Finance | * | * | | |
| Entertainment, Sports & Arts | | * | * | |
| Environment & Natural Resources | * | * | * | |
| Estate Planning & Probate | | * | * | * Prepare wills and handle estates; work with other attorneys on probate matters |
| Family Wealth Management | * | * | | |
| Family Law | | | | * |
| Financial Planning & Management | * | * | * | |
| Federal Taxation | * | * | * | |
| Franchise & Distribution | * | | | |
| Global Customs & Trade | | | * | |
| Government Contracts | | | * | *Principally in connection with sales from U.S. to foreign government |
| Health & Safety Regulation | * | * | * | |
| Healthcare Law | * | * | * | |
| Immigration | * | * | * | * |
| Indian Law | | | * | |
| Insurance Coverage & Defense | | * | * | *Represent clients up to litigation, then refer out |
| Intellectual Property | * | * | * | * |
| International Practice | * | * | * | * |
| Investment Management | * | | | |
| Labor & Employment Law | * | * | * | |
| Land Use & Condemnation | * | * | * | |
| | | | | * In immigration and criminal |

|  | BSAI | JW | GSB | C&C/GLOBALAW |
|---|---|---|---|---|
| Litigation | * | * | * | matters, also in litigation in Israel for U.S. clients |
| Maritime Law |  |  | * |  |
| Mergers & Acquisitions | * | * | * | * |
| Municipal Law |  |  | * |  |
| Nonprofit and Tax-Exempt Organizations |  |  | * | * |
| Public Policy, Lobbying & Political Law |  | * | * |  |
| Product Liability and Mass Tort | * |  |  |  |
| Real Estate | * | * | * | * Residential , in association with other attorneys |
| Recovery | * |  |  | * |
| Resorts and Hotels | * |  |  |  |
| Securitization | * | * |  |  |
| State & Local Taxation | * | * | * | * As an adjunct to corporate practice |
| Technology and Emerging Companies | * | * |  | * Represent clients in conjunction with commercial matters |
| Telecommunications | * | * |  |  |
| Transactional Finance | * | * |  |  |
| Valuation | * |  |  |  |
| White-collar Criminal Law | * |  | * |  |

As can be seen, there are many areas of overlap between Carmon's law practice and those of the Counterclaim Defendants.  Haggai Carmon's Affidavit, Exh. 11, details many specific matters in his past practice cutting across many areas of the law.  To the extent Counterclaim Defendants challenge the overlapping services significant and important factual issues exist.

Counterclaim defendants belittle the volume of cases handled by Carmon & Carmon, citing to Rakeffet Carmon's deposition testimony estimating twelve active immigration cases.  In her practice of law at Carmon & Carmon, Rakeffet Carmon represents clients on many matters that go on for extended periods of time with only periodic activity -- the remainder of time being spent waiting for tribunals to act.  At any given time she continually has over a hundred active matters, but may only have a few dozen on which she is actively involved  doing things.  The remainder of the cases remain in "hibernation" waiting action by a tribunal to cause her to take

action again.  She has a variety of clients ranging from individuals and small companies, to

corporations.  Her largest client is Teva Pharmaceutical Industries, a multibillion dollar

corporation that is the world's largest manufacturer of generic drugs.  Though Teva is an Israeli

company, all of her dealings are with American officials of the company in the United States.

The nature of the matters Ms. Carmon handles in her law practice is broad in scope, with many

immigration matters, but many other types of matters, too, including corporate law, business law,

matrimonial law, criminal defense law, and civil litigation, some of which arise from the

relationship she first establishes with the client in an immigration matter.  (Declaration of

Rakeffet Carmon, Exh. 14).

Regarding the deposition testimony of Haggai Carmon about the nature of the nature of

his cases, his attached affidavit, Exh. 11, clarifies that and provides full information on the type

of practice he has.


Counterclaim Defendants' Survey Evidence Is Flawed and Irrelevant.

Counterclaim Defendants place great emphasis on the testimony of their expert, Joseph

M. Ridgway, based on the survey data generated by Ridgway.  (SUF, pages 17-18; MPA, pages

19-22).   But Ridgway's survey is fatally defective in that he surveyed the wrong universe.  He

did not survey the *purchasing public (sometimes called the consuming public)*, which

Counterclaim Defendants themselves acknowledge is the relevant sampling for such a survey.

(MPA, page 15).  Instead, he surveyed international lawyers -- an irrelevant group with far

different sophistication, training, and interests than clients looking for legal counsel, which

would be part of the purchasing public.  That group -- clients looking for legal counsel -- was not

surveyed and, thus, the survey has no meaning in the Court's determinations and should be ignored, as should any opinions or testimony based on the Ridgway survey.

The issue of confusion focuses on what a consumer -- a client in this case -- would think when the client sees or hears the word "Globalaw."  It is not a matter of what international lawyers would think.  The declarations in Exh. 13 prove that this is at least a disputed issue for a jury to decide.

<u>Carmon Is Entitled to a Monetary Award for Counterclaim Defendants' Infringement.</u>

Counterclaim Defendants contend that Carmon needs to be able to prove more than just the use of the mark and income from that use in order to qualify for monetary damages in all jurisdictions or at least some jurisdictions, and therefore urges this Court to require these as elements of proof before obtaining money damages, (MPA, at 39 )

While Carmon disagrees that more than use of the mark and  income need be proven to entitle it to a monetary award, clearly there are additional factors that entitle Carmon to a monetary award under any jurisdiction's reading of the Lanham Act, as amended.   Though Carmon does not agree that it must show willfulness and/or bad faith to be entitled to a monetary award, it has done so, nonetheless.  Carmon has set out above, at page 14, the willfulness and bad faith evinced by Counterclaim Defendants.  Further, discovery on those issues has been requested by Carmon but the counterclaim defendants have refused to provide the requested discovery.  (See two pending Carmon motions to compel, against BSAI and JW, docket numbers 90 and 110.)

An interesting assertion is made by GSB at its Motion for Partial Summary Judgment (docket numbers 105, 106) at 14:  ". . . the record is entirely to the effect that consumers of legal services know exactly who they are hiring, and that no business diversion has taken place."  It

should come as no surprise that this assertion is not backed by any evidence in the record or otherwise.  In fact, the natural inference is that a client who selects GSB as a result of a referral from another Globalaw member doesn't know anything about GSB initially except that GSB is a member of Globalaw Limited.  True, the client may then investigate further in various resources, but the initial contact likely involves no more than association of GSB with the name Globalaw.  Thus, GSB benefits from the infringing use of the mark by GSB.

One of the problems faced by GSB is that there have been no cases decided in this Circuit on the issue of entitlement to monetary awards in such cases as this. Under 15 U.S.C. § 1117(a), if an infringer manufactures and sells a slingshot using an infringing mark, the trademark owner does not have to prove that the sales by the infringer were caused by the mark.  The law presumes that the use of the infringing mark was influential in the sale and entitles the owner of the mark to the income from sales of the infringing slingshots and only entitles the infringer to offset allowable deductions.  In common parlance, the owner of the mark gets the profits and the infringer is not heard to complain that perhaps some of the slingshots were sold because of buyer motivations other than use of the infringing mark.

Here, counterclaim defendants put the name GLOBALAW all over their legal services -- on the Internet (Exh. 5 at 111), on letterheads (Exh. 9, JW Production Document JW 001780), on responses to potential clients' requests for proposals (Exh. 10, BSAI Production Document BSAI 0205, 0217), in the Globalaw Limited Referral Book (Exh. 5 at 241-242), and in many other places.  The Lanham Act does not require that Carmon show that the "sales" (clients acquired or bringing the firm new work since beginning infringing use of the mark) were solely due to the use by the infringing counterclaim defendant mark Globalaw.   D.C. Circuit law does not rewrite the Lanham Act to so require.

**Extraneous Issues Raised But Not Part of the Motion**

In an attempt to prejudice the Court against Carmon, Counterclaim Defendants point out that Haggai Carmon didn't pass a U.S. bar exam "despite multiple attempts."   But that is irrelevant to whether Carmon owned the service mark or whether  the counterclaim defendants acted in bad faith or willfully.  Mr. Carmon took and passed the rigorous Ethics Bar Examination in New York -- a difficult United States bar exam by any definition -- passed the scrutiny of the New York Character and Fitness Committee, and was sworn in by the Appellate Division of the Supreme Court of New York.  (Exh. 1)

Then Counterclaim Defendants insinuate that what Mr. Carmon does in the United States may not really be authorized, by saying "Nevertheless, *based on his contention* that he can act as a 'legal consultant' by the State Bar of New York (pursuant to New York statute recognizing foreign attorneys) under certain limited circumstances. . . ." (emphasis supplied).   Mr. Carmon's right to consult on legal matters in the United States  and his right under the supervision of a member of the New York Bar to advise clients in New York about New York law are not based on "his contention" but on authorization from the Appellate Division of the Supreme Court of New York.  (Exh. 1, Declaration of Rakeffet Carmon)

Mr. Carmon is a lawyer of great skill and international reputation, as is borne out by the fact that since 1985 Mr. Carmon has been regularly retained by the United States to represent it in Israeli civil litigation.  (Exh. 11, Affidavit of Haggai Carmon)  Additionally, Mr. Carmon is a lawyer for the U.S. Embassy in Israel.  (Exh. 11)  Certainly, the Department of Justice would not have retained Mr. Carmon for the past twenty years for such important work in such an important country unless it was satisfied that he was authorized and capable of providing the

services in the United States and elsewhere in the world.  This is work Carmon performed for United States clients under the mark GLOBALAW.  (Exh. 1)

All of these sideshow allegations are attempts to distract the Court from the fact that counterclaim plaintiffs Carmon & Carmon and its associated attorneys have been using the GLOBALAW mark to promote and render Carmon & Carmon's legal services throughout the U.S. without interruption since before 1988.  (Exh. 11)

## Prayer for Relief

For all the reasons stated above, counterclaim plaintiffs move the Court for an order denying the Motion for Summary Judgment and authorizing discovery, including depositions, under Rule 56(f).   The summary judgment motion should be denied because there are genuine issues of material facts shown above.  In the alternative, the motion should be taken under advisement until after the close of discovery pursuant to Rule 56(f).

Because of the order and opinion of Magistrate Judge Kay, received by mail today, November 28, 2005, which implicates much of what Carmon has presented in opposition to the motion for summary judgment, and Carmon's planned appeal of that order to Judge Kotelly, Carmon moves for an order allowing a supplemental and modified memorandum of points and authorities to be filed after Judge Kotelly's decision on the appeal.

Because the sealed opinion and order were only received November 28, Carmon requests that Judge Kotelly extend the time within which an appeal must be filed with her until December 12, 2005

A proposed order is appended.

**<u>Counterclaim plaintiffs request oral argument on this motion.</u>**  Counterclaim plaintiffs already have a pending request for oral arguments in pending discovery motions relating to some of the same issues as are raised here.

Respectfully submitted,

/s/ John C. Lowe
John Lowe, P.C.
5920 Searl Terrace
Bethesda MD 20816
Phone 301-320-5595
Fax    301-320-8878
e-mail johnlowe@johnlowepc.com
Attorney for counterclaim plaintiffs

November 28, 2005